IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID SIMEONE**<br>416 Heritage Drive<br>Gettysburg, PA 17325<br><br>*Plaintiff,*<br><br>vs.<br><br>**DUQUESNE UNIVERSITY OF THE HOLY SPIRIT**<br>600 Forbes Avenue<br>Pittsburgh, PA 15282<br><br>-and-<br><br>**ANNIE MULLARKEY SAWA**<br>600 Forbes Avenue<br>Pittsburgh, PA 15282<br><br>-and-<br><br>**DOUGLAS K. FRIZZELL**<br>600 Forbes Avenue<br>Pittsburgh, PA 15282<br><br>*Defendants.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby makes the following allegations this Complaint against each Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against each Defendant for unlawful violations of Title IX of the Education Amendments of 1972 and other applicable law.

## PARTIES

2. Plaintiff is David Simeone, an adult individual currently residing at the above address.

3. Defendant, Duquesne University of the Holy Spirit ("Duquesne"), is a private university that is believed to have been created and existing pursuant to the laws of the Commonwealth of Pennsylvania with a principal place of business at the above address.

4. Defendant Anne Mullarkey Sawa ("Sawa") is an employee of the Defendant who serves as its Associate Director of Residence Life.

5. Defendant Douglas K. Frizzell ("Frizzell") is an employee of the Defendant who serves as its Vice President for Student Life.

6. At all times relevant hereto, all Defendants acted by and through their agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

## JURISDICTION and VENUE

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over each Defendant because each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

9. The United States District Court for the Western District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331

and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

10. The Court may also maintain supplemental jurisdiction over the state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

11. Venue is properly laid in the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because each Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was a student in the Western District of Pennsylvania at the time of the unlawful actions set forth herein).

## FACTUAL BACKGROUND

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff is a student of Duquesne.

14. Plaintiff is a Caucasian male.

15. On or about February 26, 2016 at approximately 4:00 PM, Plaintiff and a friend were engaged in a private conversation on the third floor of Duquesne's music school.

16. Another student was present during this conversation.

17. While Plaintiff was having his conversation with his friend, another student, Keana Knight (an African American student) was sitting approximately twenty ("20") feet away.

18. On or about March 10, 2016 at approximately 4:30 PM, Plaintiff was asked to meet with Dr. Paul F. Doerksen, Chair of Music Education & Music Therapy.

19. Plaintiff was informed by Dr. Doerksen that he was reported to Duquesne's Office of Student Conduct ("OSC") by an "unnamed student".

20. The unnamed student reported overhearing a conversation between Plaintiff and another person where Plaintiff allegedly stated that the unnamed student was "not wearing a bra" or something to that effect.

21. Plaintiff immediately responded that the conversation was private between himself and his friend.

22. Plaintiff told Dr. Doerksen that he wanted to speak to his friend about the allegation so that, if necessary, she could give a statement.

23. Dr. Doerksen told Plaintiff that his plan was not a problem and that it might well be a good idea.

24. Plaintiff later discovered that the student who had complained about him was one Keana Knight, who is believed and therefore averred to be a music therapy major.

25. Upon information and belief, Keana Knight has a reputation for engaging in racially charged activity on campus.

26. Plaintiff's friend agreed to meet with OSC in order to clear up, once and for all, the flagrant injustice of the accusation against him.

27. Plaintiff's friend told him shortly after their conversation on February 25, 2016 that she had received a "Facebook" message from Keana Knight.

28. In that message, Keana Knight threatened Plaintiff by stating "I wanted to choke the shit outta him because of how he was talking to you and I wanted to say something and I feel guilty for not saying anything but honestly I hate that boy so much that I'd probably end up cutting him so I had to stay silent."

29. On or about March 11, 2016 at approximately 8:40 AM, Plaintiff e-mailed Dr. Doerksen expressing significant and understandable concern about the threat levied by Keana Knight.

30. In that same e-mail, Plaintiff requested a meeting with Dr. Doerksen.

31. A meeting was scheduled for March 14, 2016 between 10:30 AM and 11:00 AM.

32. At the meeting with Dr. Doerksen, Plaintiff against expressed concern for his safety especially because he did not know Keana Knight.

33. Plaintiff also indicated that he never even had a conversation with Keana Knight.

34. Dr. Doerksen acknowledged Plaintiff's concerns and advised him to report the same to OSC.

35. Dr. Doerksen told Plaintiff he would e-mail Sawa before Plaintiff had a chance to meet with her to make her aware of the threats made by Keana.

36. On or about March 14, 2016 at approximately 4:30 PM, Plaintiff was at a Starbucks in Duquesne's student union.

37. Plaintiff received a call from a woman who apparently represented OSC.

38. The woman was later revealed to be Defendant Sawa.

39. The woman spoke to Plaintiff in an officious and threatening tone.

40. She accused Plaintiff of speaking to people about the incident that was reported to OSC.

41. He was "ordered" by OSC to cease and desist discussing the report.

42. The woman threatened Plaintiff by stating that if he did not stop talking about the incident he would be removed from campus and academic affairs.

43. The woman did not specify the "incident", who Plaintiff was allegedly talking to, or who he was talking about that warranted being removed from campus.

44. This action by Sawa was retaliation for Plaintiff's complaint about Knight's violent Facebook message and her racist commentary.

45. On or about March 15, 2016 at approximately 7:00AM, Plaintiff and his uncle shared a conference call with Sawa wherein Plaintiff's uncle had repeated that Keana Knight had made a physical threat of violence against Plaintiff.

46. It was obvious that when Plaintiff complained about Knight he was telling Sawa that was being treated differently because he is a Caucasian male.

47. Plaintiff's uncle also spoke to Frizzell and said "the situation is being handled differently because it is a white male being threatened by a black female student, and if the roles were reversed, my nephew would be kicked out of school and criminal charges would be pressed again him."

48. Frizzell responded to Plaintiff's uncle by stating "that would be ridiculous."

49. Plaintiff's uncle also asked Frizzell to define "uncivil" and Frizzell stated "I could not tell you, it is up to the offended person to be decided."

50. Upon information and belief, Sawa was aware of Plaintiff's complaint regarding the Facebook message before she called him on March 14, 2016 and before the conference call on March 15, 2016.

51. Sawa gave Plaintiff "permission" during the conference call to report the Facebook message and told Plaintiff it would be "investigated by student conduct."

52. Sawa scheduled a meeting to allegedly discuss the threat made against Plaintiff by Keana Knight.

53. Sawa refused to allow Plaintiff's uncle to attend the meeting, but stated that his uncle could attend by phone.

54. Later in the morning, Plaintiff filed a complaint with the Duquesne police department and met with Sawa.

55. Sawa asked Plaintiff, before anything began, whether he was recording the meeting.

56. Sawa's tone was nasty, hostile and entirely unsympathetic to the Plaintiff.

57. Plaintiff requested that his uncle be permitted to attend by way of telephonic conference as Sawa had previously promised,

58. Sawa reneged on her promise and refused to allow Plaintiff's uncle to participate by telephone.

59. Upon information and belief, Sawa would not allow Plaintiff's uncle to participate because she did not want any witnesses to the conversation.

60. Sawa told Plaintiff that the "anonymous student" reported him for allegedly using the word "cunt" and for allegedly stating "some girls are too fat to be raped" and "fat girls do not need rape whistles."

61. Plaintiff responded by stating that he had never spoken like that.

62. Plaintiff was absolutely appalled by the false, malicious and outright vicious accusation.

63. Plaintiff also explained to Sawa why he would never speak in such a manner.

64. Plaintiff told Sawa that his sister had been raped the previous year by her roommate.

65. Plaintiff told Sawa that when his mother was in college, her drink was spiked and someone tried to rape her.

7

66. Sawa then told Plaintiff he would be facing a charge of incivility.

67. Plaintiff asked for a definition of "incivility" and Sawa was not competent enough to provide a definition on the spot.

68. Plaintiff also asked to see the definition in the handbook, but Sawa did not show him.

69. She eventually defined it as "offending other people near you by actions or words."

70. On or about March 21, 2016, Sawa sent an e-mail to Plaintiff containing an "offense" letter.

71. Approximately two ("2") days later, Plaintiff objected, stating that the procedure for due process under the student code of conduct had not been afforded to him.

72. Plaintiff sent a timeline explaining how his due process rights were violated and provided three ("3") days when he was available to schedule a meeting.

73. After Sawa violated Plaintiff's due process rights under the student code of conduct, Sawa refused to meet with him at any of the times he suggested.

74. Instead, Sawa asked Plaintiff to make himself available on four ("4") separate dates- March 29, 2016, March 30, 2016, April 4, 2016 and April 5, 2016.

75. Plaintiff responded to Sawa on March 26, 2016 stating that he would not provide further dates and times because his original three ("3") days followed appropriate procedural guidelines.

76. The three ("3") days provided also did not interfere with Plaintiff's education.

77. Plaintiff told Sawa, specifically, that his first priority was to be a student.

78. On April 4, 2016, Sawa sent Plaintiff an e-mail scheduling a meeting for April 18, 2016 at 11:00 AM.

8

79. During the April 18, 2016 meeting, Sawa told Plaintiff that she had "investigated" Plaintiff's complaint about Knight's violent message.

80. Sawa indicated she spoke with Plaintiff's friend and Knight.

81. After that "review" Plaintiff was charged with "incivility" and a new charge of "sexual harassment."

82. This was another act of retaliation against Plaintiff because of his complaint about Knight.

83. Sawa then presented Plaintiff with three ("3") options:

   a. Responsible Plea Waiver (student accepts responsibility, accepts sanctions(s) given, signs waiver)

   b. Administrative Hearing (with the Resident Director or Director of Student Conduct) or

   c. Sexual Violence Conduct Board (three faculty and/or administration staff).

84. Sawa withdrew the Administrative Hearing as an option.

85. When Plaintiff inquired as to why he could not have an Administrative Hearing, Sawa told Plaintiff she would "just prefer not to do it."

86. Plaintiff asked Sawa to provide a definition of "incivility" from the student conduct handbook and provide examples.

87. Sawa said she had no examples and that the definition of "incivility" was open for interpretation.

88. Sawa volunteered a definition of sexual harassment, but entirely failed to demonstrate, in any way, how Plaintiff's alleged conduct could even remotely be regarded as sexual harassment.

89. Plaintiff asked Sawa who he was "guilty" of harassing.

90. Sawa told Plaintiff he had "sexually harassed" Keana Knight by "saying offensive things in front of her in a public area."

91. Plaintiff asked if he had spoken to Knight or if her name was mentioned in the alleged conversation, to which Sawa responded "No, but you said offensive things in front of her in a public area."

92. Thereafter, Sawa and OSC scheduled a hearing before the "Sexual Violence Conduct Board" on the exact date and time that Plaintiff had a final examination.

93. Sawa told Plaintiff she would look at his finals schedule when selecting a date to prevent a conflict with his academics.

94. Upon information and belief, Sawa and/or others had access to Duquene's internal computer systems.

95. Upon information and belief, Sawa and/or others had knowledge about Plaintiff's course load and/or his examination dates.

96. Upon information and belief, Sawa and/or others deliberately and maliciously scheduled the hearing for the same date and time as Plaintiff's final examination.

97. Plaintiff complained to Sawa that if any of his witnesses could not show up for the hearing on that day it was "too bad"—which was completely and utterly unacceptable behavior.

98. On April 22, 2016, Plaintiff served a cease and desist letter from his counsel directed to Sawa at Sawa's office indicating that if his record was not cleared, he would be filing a civil action to seek redress for violations of his civil rights.

99. Sawa was not at her office at the time, so Plaintiff merely left the letter with the secretary and left to go about his business.

100. After receiving that letter, Plaintiff received a defamatory letter from Defendant Frizzell stating that he was being suspended by Duquesne.

101. Between 8:07 and 8:08 PM on April 22, 2016, Plaintiff received three ("3") calls from Nick DuBos, a Resident Director.

102. When he connected with Plaintiff, he demanded to know his whereabouts.

103. Plaintiff explained that he was not on campus and that he did not know when he would be returning.

104. He told Plaintiff he had a letter waiting for him and that it would be at the front desk of his dormitory.

105. When Plaintiff arrived back to his dorm, accompanied by two other students, he asked the front desk staff for his letter, but they did not have it.

106. They then called DuBos who said he would be right over to give Plaintiff the letter.

107. Plaintiff waited outside with two other students.

108. After 5-10 minutes, DuBos approached Plaintiff while being accompanied by two Duquesne police officers.

109. DuBos handed Plaintiff his letter sealed in an envelope and told Plaintiff to "read it and ask any questions if I had any".

110. Plaintiff asked DuBos if he had to open and read the letter in front of him and he "strongly encouraged" Plaintiff because it was serious.

111. This combined with the police presence implied that DuBos already knew what was in the letter.

112. Once Plaintiff read the letter, Plaintiff asked a number of questions.

113. DuBos said, "I do not know I'm just a messenger, but I figure you would know considering this is a serious allegation".

114. The letter directed Plaintiff to remove himself from campus and the dormitory as he was suspended.

115. Plaintiff raised concerns about where he would live since his family home was 4 and a half hours away from Pittsburgh.

116. DuBos told Plaintiff he would have to figure it out on his own.

117. DuBos then asked Plaintiff if he had any more questions to which Plaintiff replied "No I am done discussing anything with you".

118. Plaintiff placed a call to his attorney and the Duquesne police insisted on staying within 15 feet of him.

119. After making a call to his attorney, DuBos approached Plaintiff again and threatened to remove him from campus that night if he "did anything stupid".

120. Plaintiff asked him to define what "doing something stupid" was in the context of DuBos' threat.

121. He refused to give an example and replied with "I think you know".

122. The letter stated, in pertinent part, "as a result of your inappropriate behavior wherein you exhibited harassing and threatening behavior towards members of the University community *including a University administrator*, you are being placed on an Interim Suspension from Duquesne University pending a formal hearing before the appropriate hearing body. This decision is being made to ensure the *safety* and wellbeing of the campus community" (*emphasis added*.)

123. This letter was copied to a Chief Thomas Hart, the Director of Public Safety, Sharon Oelschlager, Director of Residence Life, and Seth Beckman, Dean of the Mary Pappert School of Music.

124. Upon information and belief, DuBos and/or others also saw the letter and its content.

125. The suspension was in direct retaliation for Plaintiff's letter where he indicated he would seek redress for violations of civil rights that was unquestionably delivered on April 22, 2016.

126. Moreover, the defamatory suspension letter from Frizzell falsely accused Plaintiff of "inappropriate", "harassing" and "threatening" behavior towards "a University administrator" which obviously was a reference to Sawa.

127. In fact, the cease and desist letter from Plaintiff's counsel was a form of protected activity.

**COUNT I**
**GENDER DISCRIMINATION IN VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681** *et seq.*
*Against all Defendants*

128. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

129. Upon information and belief, Duquesne receives federal financial assistance.

130. Plaintiff sustained harassment because of his sex that was so severe, pervasive, and/or objectively offensive that it deprived him of access to educational opportunities insofar as he was suspended from participating in academic study.

131. The harassment of Plaintiff occurred in a context that was subject to Duquesne's control wherein it could have taken remedial action.

132. Duquesne and its agents had actual knowledge of the harassment sustained by Plaintiff.

133. Duquesne's response to the harassment sustained by Plaintiff and/or its lack of response was deliberately indifferent, insofar as the response or lack thereof was patently unreasonable in light of the known and attendant circumstances.

## COUNT II
### TITLE IX RETALIATION PURSUANT TO 28 C.F.R. §42.107(E)
*Against All Defendants*

134. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

135. Pursuant to 28 C.F.R. §42.107(e), "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this subpart, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subpart. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purpose of this subpart, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder."

136. At all times relevant hereto, Plaintiff engaged in activities or asserted rights protected under Title IX.

137. Defendants knew of the protected activity.

138. Defendants thereafter subjected Plaintiff to adverse action, treatment or conditions.

139. There is a causal connection between the protected activity and the adverse action, treatment or conditions.

140. Plaintiff has suffered damages as set forth herein.

## COUNT III
### TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000d
### REVERSE RACE DISCRIMINATION
*Against Duquesne*

141. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

142. Pursuant to Title VI, no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

143. At all times relevant hereto Plaintiff was a member of a protected class, qualified for the benefit or program at issue and suffered an adverse action under circumstances giving rise to an inference of discrimination.

144. At all times relevant hereto, the discrimination by Defendants was intentional.

145. Plaintiff has suffered damages as set forth herein.

## COUNT IV
### TITLE VI RETALIATION
*Against Duquesne*

146. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

147. At all times relevant hereto, Plaintiff engaged in activities or asserted rights protected under Title VI.

148. Defendants knew of the protected activity.

149. Defendants thereafter subjected Plaintiff to adverse action, treatment or conditions.

150. There is a causal connection between the protected activity and the adverse action, treatment or conditions.

151. Plaintiff has suffered damages as set forth herein.

**COUNT V**
**42 U.S.C. § 1981**
**REVERSE RACE DISCRIMINATION**
*Against all Defendants*

152. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

153. At all times relevant hereto, Plaintiff was a member of a protected class.

154. Plaintiff suffered an adverse action at the hands of the Defendants in pursuit of his education.

155. Plaintiff was qualified to continue his pursuant of his education.

156. Plaintiff was treated differently from similarly situated students who are not members of a protected class.

157. Defendants at all times hereto had a discriminatory motive.

158. Plaintiff has suffered damages as set forth herein.

**COUNT VI**
**42 U.S.C. § 1981 RETALIATION**
*Against All Defendants*

159. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

160. At all times relevant hereto, Plaintiff engaged in activities or asserted rights protected under § 1981.

161. Defendants knew of the protected activity.

162. Defendants thereafter subjected Plaintiff to adverse action, treatment or conditions.

163. There is a causal connection between the protected activity and the adverse action, treatment or conditions.

164. Plaintiff has suffered damages as set forth herein.

## COUNT VII
## COMMON LAW BREACH OF CONTRACT / PROMISSORY ESTOPPEL
### *Against Duquesne*

165. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

166. Pennsylvania law permits a student to sue a private university when the allegations relate to a specific and identifiable promise the school failed to honor.

167. Here, Plaintiff was not afforded due process rights promised to him by Duquesne in its student handbook and, as a direct consequence, has suffered damages as set forth herein.

168. Alternatively, pursuant to Fed.R.Civ.P. 8(d)(2), with respect to the Duquesne's handbook, Duquesne made a promise that they should have reasonably expected to induce action or forbearance on Plaintiff's part; (2) the Plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

## COUNT VIII
## COMMON LAW DEFAMATION
### *Against Duquesne & Frizzell*

169. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

170. At all times relevant hereto, the letter sent by Frizzell on April 22, 2016 was defamatory.

171. The letter was published to third parties and the publication was not privileged.

172. The letter clearly applied to and referenced the Plaintiff.

173. The letter would be understood by the receipt to have a defamatory meaning and that it intended to be applied to the Plaintiff.

174. Plaintiff has suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court:

a. Accept jurisdiction over this action;

b. Enter judgment against the Defendants and in favor of the Plaintiff.

c. Award to Plaintiffs an injunction and order requiring that the Defendants revise their policies, procedures and practices so that they are in compliance with applicable federal law;

d. Award Plaintiff compensatory damages resulting from his pain and suffering resulting from Defendants' conduct.

e. Award to the Plaintiff reasonable attorney's fees' and costs expended in litigating this action.

f. Award Plaintiff punitive damages to the extent available as a matter of law for the Defendants discriminatory practices that were engaged in with malice and/or reckless indifference to the federally protected rights of the Plaintiff.

g. Award to Plaintiff such other relief as the Court deems just and proper.

h. Plaintiff demands trial by jury pursuant to Fed.R.Civ.P. 38 on all issues so triable.

Respectfully submitted,

KOLMAN ELY, P.C.

/s/ W. Charles Sipio
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated: April 25, 2016